**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLES WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11 CV 7685 |
| ) | |
| VEOLIA ES SOLID WASTE MIDWEST, LLC ) | Judge Rebecca R. Pallmeyer |
| d/b/a VEOLIA ENVIRONMENTAL SERVICES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Welch ("Plaintiff" or "Welch"), an employee of Defendant Veolia Environmental Services ("Veolia" or "the company"), suffered a work-related injury to his left shoulder on May 27, 2009. The next day, Welch reported the injury to Veolia and sought medical attention. Welch was terminated two days later for failing to report his injury in accordance with company policy and for falsifying documents. In this lawsuit, Welch alleges that Veolia terminated his employment in retaliation for his exercising his rights under the Illinois Workers' Compensation Act (the "Act"). 820 ILCS 305/1 *et seq*. The court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.[1] The parties now bring cross motions for summary judgment on Plaintiff's claims. For the reasons set forth below, Defendant's motion for summary judgment [36] is denied and Plaintiff's motion for summary judgment [40] is denied.

---

[1] Plaintiff is a citizen of the state of Illinois. Defendant is a Wisconsin Limited Liability Company with its principal place of business in Milwaukee, Wisconsin. (Removal Pet. [1] ¶ 3.) Veolia's sole member, Veolia Es Solid Waste of North America, LLC, is also a Wisconsin Limited Liability Company. (*Id*.) The sole member of Veolia Es Solid Waste of North America, LLC is Veolia Es Solid Waste, Inc., a Wisconsin corporation. (*Id*.) Thus, Defendant is a citizen of Wisconsin.

## FACTUAL BACKGROUND

The following facts are drawn from the pleadings and the parties' Local Rule 56.1 submissions.[2] Veolia is a waste disposal and recycling firm headquartered in Milwaukee, Wisconsin. (Removal Pet. ¶ 3.) Beginning in May 2001, Welch worked as a refuse collection driver at Veolia's Waukegan Hauling division in Waukegan, Illinois. (Def.'s Rule 56.1 Stmt. of Facts [38] (hereinafter "Def.'s 56.1") ¶¶ 3-4.) Initially, Welch worked yard waste collection routes in Chicago and Waukegan. (*Id.* ¶¶ 3, 6.) From 2003 to 2007, he worked on a recycle route in Vernon Hills, Illinois. (*Id.* ¶¶ 8, 9.) For the last two years of his employment, Welch was responsible for a residential garbage route in North Chicago, covering this route by himself in a side-loader truck. (*Id.* ¶ 9.) Welch's duties included collecting garbage as well as bulk items such as couches and mattresses. (*Id.* ¶¶ 9-11; Excerpts from the Dep. of Charles Welch [39-1] (hereinafter "Welch Dep. Excerpts"), Ex. A to Def.'s 56.1 App., at 101:2-102:9.)

### Accident and Injury Reporting Policies

Veolia requires all employees injured on the job to complete an employee injury report "immediately, or as soon as possible." (Def.'s 56.1 ¶ 21; Def.'s Resp. to Pl.'s Rule 56.1 Stmt. of Add'l Facts (hereinafter "Def.'s Resp. to Pl.'s 56.1 Add'l") [53] ¶ 3.) Pursuant to Veolia's Company Work Rules and Regulations, "[i]t is prohibited to . . . fail to report an accident and/or injury

---

[2] Defendant contends that Plaintiff's motion should be denied due to Plaintiff's failure to comply with Local Rule 56.1. (Def.'s Resp. to Pl.'s Mot. for Summ. J. ("hereinafter "Def.'s Resp.") [46] at 5.) Plaintiff did not file a Rule 56.1 statement of facts in support of his motion for summary judgment. After the parties responded to one another's motions, Plaintiff filed a response to Defendant's Rule 56.1 statement of additional facts, which included "additional undisputed facts" in support of his own motion. (*See* Pl.'s Resp. to Def.'s 56.1 Rule 56.1 Stmt. of Add'l. Facts [52] (hereinafter "Pl.'s Resp. to Def.'s 56.1 Add'l.").) This statement contains no description of the parties and does not assert facts supporting venue and jurisdiction. Assuming those requirements apply with equal force in a case such as this, where the parties have submitted cross-motions for summary judgment (and where Defendant does not challenge venue or jurisdiction), the court has discretion to excuse those requirements, *see Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000), and chooses to do so in this instance.

immediately to management." (*Id.* ¶ 20.) Welch received a one-page summary of the company rules which states that "[a]ll employees must immediately report to their supervisors, all accidents and injuries, no matter how minor. No exceptions." (Veolia Work Rules and Responsibilities [39-8], Ex. H to Def.'s App. to 56.1 Stmt. [39] (hereinafter "Def.'s 56.1 App.").) Welch was trained that in the event of an accident or injury he was to report the incident in writing and report it to a supervisor during the workday, or at the end of the day when he turned in his paperwork. (Def.'s 56.1 ¶ 19.) Welch acknowledges that he was aware of these rules, and testified that he understood that if he had an accident or injury on the job, he was expected to report it immediately. (*Id.* ¶¶ 17, 20.) While employed by Veolia, Welch has had at least five on-the-job injuries, and has filed "multiple" workers' compensation claims against Veolia. (Def.'s Rule 56.1 Stmt. of Add'l. Facts [47] (hereinafter "Def.'s 56.1 Add'l.") ¶¶ 37-38.) The parties agree that prior to the incident at issue in this case, Welch had reported all of his previous injuries to Veolia in accordance with company policy. (Def.'s 56.1 Add'l. ¶ 37; Pl.'s Resp. to Def.'s 56.1 Add'l. ¶ 37.)

**The Injury**

In his amended complaint, Welch asserts that on May 27, 2009 he "experienced acute soreness in his left shoulder from lifting the large, heavy items." (Am. Compl. [11] ¶ 15.) At his deposition, Welch explained that the loads on his route were particularly heavy that day, and at the end of his shift he felt soreness throughout his body including a "twinge" in his shoulder. (Welch Dep. Excerpts 81:1-82:11.) Welch did not report an injury to anyone at Veolia on May 27, however. (Def.'s 56.1 ¶ 27.) At the end of his shift, he completed and signed a route sheet in which he certified that he had completed his route and that he had no accident or injury that day. (*Id.* ¶ 27.) Welch initially alleged that he was unable to report any injury to his supervisor that day, because when he returned from his route, his supervisor had already left for the day. (Am. Compl. ¶ 15.) Welch now asserts that he did not report an injury on the 27th because the twinge he felt in his

3

shoulder did not cause him pain, and he did not believe himself to be injured at that time. (Pl.'s Resp. to Def.'s Rule 56.1 Stmt. [45] (hereinafter "Pl.'s 56.1 Resp.") ¶ 24.)

On May 28, 2009, before Welch's shift began at approximately 4:30 or 5:00 a.m., route supervisor Steve Budny ("Budny") observed that Welch's shoulder was red and swollen. (Welch Dep. Excerpts 89:21-90:1, 90:15-22.) Welch asserts that he told Budny that he felt a "tweak" in his shoulder during his previous shift, and that he had begun experiencing shoulder pain that morning. (Pl.'s 56.1 Resp. ¶ 28.) In his Supervisor's Investigation Report, Budny noted that on May 28, 2009, Welch reported that he had injured his shoulder the night before. (Supervisor's Investigation Rpt. [41-16], Ex. P to Pl.'s Mem. in Supp. of Mot. for Summ. J. (hereinafter "Pl.'s Mem.") [41], at 1.) According to Budny, Welch told him that he felt a "tweak or pain in his shoulder" while lifting the night before. (*Id*.) Budny directed Welch to complete an incident report, which Welch did later that day. (Def.'s 56.1 ¶ 29, 33; Pl.'s 56.1 Resp. ¶ 29.) Welch's incident report states only that on May 27, 2009, he was lifting heavy bulk items and bags and noticed a bulge in his shoulder the following morning. (Welch's Employee Stmt. [41-9], Ex. I to Pl.'s Mem.)

After learning that Welch was injured, Budny asked Welch if he thought he could continue to work. (Def.'s 56.1 ¶ 29.) Welch replied that he believed that he could, so Bundy told Welch that he would ask Welch's operations manager, Charles Vasalos ("Vasalos"), to check in on him later. (*Id.* ¶¶ 12, 29.) Later that day, while Welch was on his route, Vasalos stopped to talk to Welch. Vasalos asked Welch how he was feeling and whether he wanted to see a doctor. (*Id.* ¶ 30.) Welch replied that it could not hurt to have his shoulder examined, so Vasalos instructed Welch to go to the clinic after returning his truck to the yard. (*Id*.) Welch finished the collections on the street on which he was working, returned his truck to the yard, and went to the clinic where Veolia

4

sends its employees who are injured on the job.³ (*Id.* ¶ 32.) Welch continued to work light duty on May 29 and 30, 2009. (*Id.* ¶ 34.)

On June 1, 2009, Welch called Veolia human resources manager Cindy Greenbaum ("Greenbaum") to report his injury and to discuss his working conditions—particularly the difficulty he had with the heavy loads and bulk items he encountered on his route. (Am. Compl. ¶ 19; Def.'s 56.1 ¶ 47; Welch Dep. Excerpts 100:13-102:13.) Welch insists he told Greenbaum that he believed his injury resulted from lifting heavy objects on a daily basis, rather than from a single traumatic event. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 19.) On the morning of June 2, 2009, Greenbaum sent an e-mail message to Veolia General Manager David Wall (hereinafter "Wall") reporting that Welch had told her that he had injured his shoulder while lifting trash cans on May 27, 2009. (June 2, 2009 Email [45-2], Ex. B to Pl.'s 56.1 Resp.) Greenbaum concluded without elaboration that Welch had disregarded company safety policies by lifting a can that was too heavy. (*Id.*) Greenbaum's e-mail states, further, that the injury was "deemed preventable," although she does not specify who made this determination or what information supported it other than her conversation with Welch the day before. (*Id.*) In a parenthetical at the end of the message, Greenbaum notes that Welch is "on the repeater list with this." (*Id.*) It is not clear whether Greenbaum is referring to Welch's prior injuries or to his alleged violation of the company safety rules, and no explanation has been given of what it means to be on the "repeater list." On June 1, 2009, Vasalos and Wall also received an e-mail from Sedgwick Claims Management Services, Inc. stating that Welch had filed a claim, which had been assigned to one of Veolia's claims adjusters who would contact Wall within

---

³ Welch asserts that on May 28, 2009, a Veolia-approved physician determined that he suffered a work-related injury to his left shoulder and that this diagnosis was confirmed by his personal physician on May 29, 2009. (Am. Compl. ¶¶ 17-18.) There are no medical records or other evidence before the court regarding the nature and extent of Welch's injury or the treatment he received, other than the assertion that he underwent an unspecified shoulder surgery in October 2009. (Pl.'s 56.1 Resp. ¶ 34.)

5

24 hours to discuss the matter. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 5; June 1, 2009 Email [45-4], Ex. D to Pl.'s 56.1 Resp.)

**Termination**

On June 2, 2009, Vasalos and Wall met with Welch and told him that he would be subject to disciplinary action for failing to report an accident or injury. (Def.'s 56.1 ¶ 36.) Vasalos and maintenance manager Ron Atkinson prepared a disciplinary report which states that during the investigation into Welch's injury, Welch stated that he felt soreness in his shoulder as if he had pulled a muscle at approximately 2:00 P.M. on the afternoon of May 27, 2009. (Disciplinary Rpt. [39-13], Ex. M to Def.'s 56.1 App.) The report does not identify when, or to whom, Welch made the statements attributed to him. (*See Id.*) The disciplinary report concludes that termination was appropriate, and cites dishonesty, failure to report an injury, violation of work/safety rules, and falsification of company documents as reasons for termination. (*Id*.) Later that day, Vasalos and Atkinson had another meeting with Welch during which Vasalos told Welch that he was terminated. (*Id*. ¶¶ 37, 38.) Welch was presented with the disciplinary report, which he refused to sign. (*See* June 2, 2009 Rider [41-1], Ex. A to Pl.'s Mem.) Two days later, on June 4, 2009, Welch filed a workers' compensation claim for the shoulder injury.[4] (Def.'s 56.1 ¶ 42.)

## DISCUSSION

As noted, both sides have moved for summary judgment. Welch alleges that Veolia violated Illinois law and public policy by terminating him in retaliation for reporting a workplace injury and in anticipation of his filing a workers' compensation claim. Veolia contends that Welch cannot establish that his injury report caused his discharge. Veolia argues that Welch has presented no evidence of causation, and that Welch, in fact, has conceded that his discharge was not retaliatory. Veolia contends, further, that Welch's claim fails because the company has asserted a legitimate

---

[4] Welch's workers' compensation claim was later settled. (Pl.'s 56.1 Resp. ¶ 42.)

non-retaliatory reason for his termination: that Welch failed to report the injury in accordance with company policy and falsified a document relating to his injury. Welch insists that Veolia's stated reason for his termination is pretextual because he did in fact report the injury in accordance with company policy.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a summary judgment motion, the court construes the evidence and all inferences in the light most favorable to the nonmoving party. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). Once a motion for summary judgment has been properly supported, the opposing party has the burden of setting forth specific facts which present a genuine issue of fact for trial. *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir. 1986). By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 247-48. The court will grant summary judgment against a party who does not produce evidence that would reasonably permit the finder of fact to find in its favor on a material question. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). Because both parties have moved for summary judgment, the court adopts a "Janus-like perspective: As to each motion the nonmovant's version of any disputed facts must be credited." *Adkins v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 787 F.Supp.2d 812, 814 (N.D.Ill. 2011).

**Retaliatory Discharge**

Under Illinois law, a plaintiff alleging retaliatory discharge must establish (1) he was discharged from employment; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 707 (7th Cir. 2008) (citing *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720, 728 (Ill. 1992)). The "clear mandate

of public policy" element is satisfied if an employee is discharged in retaliation for the exercise of the employee's workers' compensation rights. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 941 (7th Cir. 2002) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353, 357-59 (Ill. 1978)). The Act itself does not prohibit retaliation, but Illinois courts have long recognized such a cause of action to "ensure that the sound public policy underlying the [Act] c[an] not be frustrated by the actions of an employer." *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909, 911 (Ill. 1988) (citations omitted). To establish retaliation in this context, Welch must show: "(1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citation and quotation omitted).

**Workers' Compensation Rights**

Welch's status as an employee is not contested, and Veolia has conceded that Welch exercised a right under the Act. (Def's Mem. in Supp. of Mot. for Summ. J. (hereinafter "Def.'s Mem.") [37] at 3-4.) How Welch exercised his right, however, is worth brief discussion, as it bears on both causation and pretext. Welch did not file his workers' compensation claim until June 4, 2009, two days after his termination. But Welch need not have filed a workers' compensation claim before his termination to satisfy this element. Courts have recognized three circumstances in which an employee has exercised a right under the Act that can give rise to a retaliation claim: (1) where the employer takes action after an employee merely requests and seeks medical attention; (2) where the employer takes action after an employee files a workers' compensation claim; and (3) where an employee is preemptively fired to prevent such a filing. *Gordon*, 674 F.3d at 773. Welch's claim clearly satisfies the first approach. An employee discharged after informing his company that he has been injured and intends to seek medical attention has a claim for retaliatory

8

discharge. *Hinthorn*, 119 Ill. 2d 526, 519 N.E.2d at 910-13. In *Hinthorn*, the Supreme Court of Illinois observed that "the overriding purpose of the Act is to protect injured employees by ensuring the availability of medical treatment, by shifting the financial burden of such treatment to the employer." *Id.*, 519 N.E.2d at 913 (citations omitted). The court noted that "[r]equesting and seeking medical attention . . . is only the crucial first step in exercising rights under the Workers' Compensation Act." *Id.* There is no dispute that Welch sought medical treatment the day after his injury. While the parties center their dispute on Welch's reporting of the injury, the injury report was a condition precedent to his seeking medical treatment and is therefore Welch's first step in exercising his rights under the Act.

**Causation**

"[W]hen a retaliatory discharge case governed by Illinois law is litigated in a federal court, the federal court must apply the standard of the state law to a motion for summary judgment, and not the federal standard." *Gacek v. Am. Airlines, Inc.,* 614 F.3d 298, 303 (7th Cir. 2010). Under Illinois law, Welch "must affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Gordon*, 674 F.3d at 774. To establish causation, Welch "must proffer sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated." *Id. a*t 775 (citation and internal quotation omitted). If Welch makes such a showing, Veolia must provide a legitimate reason for terminating his employment. *Id.* As noted, Veolia does not dispute that Welch exercised rights granted by the Illinois Workers' Compensation Act. It does, however, argue that Welch has failed to show a causal connection between his workers' compensation activity and his termination. Veolia contends that Welch has presented no evidence of causation, and that Welch has conceded that his discharge was not retaliatory. The court concludes that the evidence on this issue is in fact disputed.

First, Veolia contends that Welch cannot establish causation because, in Veolia's estimation, Welch has conceded this point. In support, Veolia identifies statements from Welch's deposition in which he appears to concede that he was fired for the reasons stated on the disciplinary report. Veolia also highlights statements that Veolia characterizes as admissions that other non-retaliatory reasons motivated Welch's termination such as his going over Wall's head and reporting his injury to Greenbaum. (Def.'s 56.1 ¶¶ 45-46; Def.'s 56.1 Add'l ¶¶ 32-33.) These statements are judicial admissions that bind Welch, and require judgment in favor of the employer, Veolia urges. (Def.'s Mem. at 4-5; Def.'s Resp. at 1-2, 12.) The court disagrees. Deposition testimony is not a judicial admission; it is evidence. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996); *see also Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995) ("When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.").

Second, at this stage, evidence of Welch's subjective beliefs regarding his employer's motives is not dispositive. "[T]he elements of a retaliatory discharge claim are 'purely factual' and 'pertains to the conduct of the employee and the conduct and motivation of the employer.'" *Crosby v. Cooper B-Line, Inc.*, No. 13-1054, 2013 WL 4007928, at *5 (7th Cir. Aug. 7, 2013) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)). Welch cannot know what was in the minds of those involved in his termination. Welch's belief that other factors may have contributed to his termination does not support summary judgment against him any more than an emphatic belief that Veolia retaliated against him would support summary judgment in his favor. Welch's testimony may reflect on his sincerity and credibility, but, on summary judgment, the court is not permitted to "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50). Accordingly, in deciding whether there are disputes of fact

requiring denial of the motions, the court will confine its assessment to those facts that are not contested.

Welch insists that there is direct proof that his termination was motivated by his workers' compensation activity. Welch claims that he made Veolia aware of his intention to take legal action and informed Veolia that he had already spoken to a workers' compensation attorney before he was terminated. (Pl.'s Mem. at 5; Pl.'s Resp. to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Resp.") [44] at 4.) Welch directs the court's attention to a document dated June 2, 2009 entitled "Rider to Termination Letter of Charles Welch" which purports to memorialize the meeting at which Welch was terminated. (*See* June 2, 2009 Rider.) The rider states in part: "Upon completion of the meeting, Mr. Welch volunteered the notice that he had already made what he referred to as 'necessary calls' regarding this matter, including one to a 'discrimination lawyer' during working hours." (*Id.*) According to Welch, this statement is included in the rider as a reason for his termination. (Pl.'s Mem. at 5-6; Pl.'s Resp. at 4.) Welch is mistaken. The phrase "upon completion of the meeting"–omitted from Welch's quotations of the sentence–makes it clear that the statements attributed to Welch were made after he was informed that he was terminated, and thus, could not have influenced Veolia's decision to discharge him. (June 2, 2009 Rider.) Welch also directs the court's attention to a June 4, 2009 letter to Veolia from Welch's workers' compensation attorney. (*See* June 4, 2009 Attorney Ltr. [41-6], Ex. F to Pl.'s Mem.) This letter also sheds little light on Veolia's motivation for firing Welch, as it was sent to Veolia after Welch was terminated.

Welch highlights testimony by Vasalos and Wysocki to show that Veolia's termination decision anticipated his filing a workers' compensation claim. Specifically, Welch relies on Vasalos's statement: "All I know is that, if [Welch] had reported [the injury] when it happened, he would have complied with the policy, and . . . all this wouldn't be happening right now." (Vasalos Dep. Excepts [41-11], Ex. K to Pl.'s Mem., at 21:1-2.) This statement is vague, at best, and does

11

not support an inference that Veolia discharged Welch in anticipation of his filing a workers' compensation claim. Welch also highlights Wysocki's statement: ". . . and if we're not being notified properly, things can escalate, so we need to know immediately." (Wysocki Dep. Excerpts [41-12], Ex. L to Pl.'s Mem., at 16:1-4.) This statement is equally vague.[5] In fact, Vasalo's and Wysocki's statements are arguably consistent with Veolia's position that it was Welch's late injury report, not the threat of a workers' compensation claim, that led to his termination. Moreover, Wysocki goes on to explain that Veolia's policy exists in part to ensure that the injury occurred on company time, and to make sure that employee injuries are treated promptly, so that they do not get worse. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 13.) These are legitimate concerns, and evidence that Welch was terminated for an improper purpose.

While there is no direct proof that Veolia was improperly motivated, retaliatory discharge may be established by circumstantial evidence. *Jackson v. Bunge Corp.*, 40 F.3d 239, 242 (7th Cir. 1994.) In a case that rests on circumstantial evidence, plaintiff must show "that the decision-makers involved in his termination knew that he was filing a workers' compensation claim, seeking medical treatment, or otherwise asserting a right under [the Act]." *See Goode v. Am. Airlines, Inc.*, 741 F. Supp. 2d 877, 891 (N.D. Ill. 2010) (citing *Burgess v. Chicago Sun-Times*, 132 Ill. App. 3d 181, 476 N.E.2d 1284, 1287 (1st Dist. 1985); *Thomas v. Zamberletti*, 134 Ill. App. 3d 387, 480 N.E.2d 869, 871 (4th Dist.1985). Welch has made such a showing: before Welch was discharged, he reported his injury to Budny and Greenbaum, and Sedgwick Claims Management Services informed Vasalos and Wall that Welch had filed a claim for his injury. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 5; June 1, 2009 Email.) Further, this was not the first time Welch had suffered a workplace injury. The evidence shows that Welch suffered between five and ten work-related injuries while

---

[5] The parties have not provided full deposition transcripts, but rather excerpts consisting of the pages to which they cite. Neither party's excerpts contains page 21 of Wysocki's deposition, so the beginning of Wysocki's sentence and the question that elicited it are absent from the record before the court.

employed by Veolia, and filed "many" workers' compensation claims against Veolia. (Def.'s 56.1 ¶¶ 48-49.) A jury could infer that Veolia anticipated that he would do the same in this situation. Greenbaum's statement to Wall that Welch is "on the repeater list with this," could fairly be so interpreted. (June 2, 2009 Email.) True, Greenbaum may be referring to her claim that Welch violated safety policies by lifting a can that was too heavy. There is no evidence establishing that Welch actually violated any safety policy, however, and the discharge report makes no reference to repeated safety violations. (*See* Discharge Rpt.) A jury could easily conclude that Greenbaum was referring to Welch's previous injuries and workers compensation claims.

More significantly, while Veolia denies that it terminated Welch for exercising his workers' compensation rights, it does not deny that his injury report caused his termination. Veolia admits that it terminated Welch due to his reporting of a work related injury, but insists it was the timing of that report, not the report itself, that was significant. (Def.'s Resp. to Pl.'s 56.1 Add'l. ¶ 1.) Veolia has not suggested that Welch's discharge was caused by some other event such as a reduction in force, as in *Gordon v. FedEx Freight, Inc.*, 674 F.3d 775, excessive absenteeism, as in *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, or poor performance, as in *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936. In those cases, the parties attributed the discharge to different events. Here, the competing claims are really two different interpretations of the same event.

**Pretext**

Even if Welch can establish causation, his claim still fails, Veolia urges, because the company had a legitimate reason for terminating his employment. Under Illinois law, once a defendant articulates a legitimate reason for the discharge, plaintiff bears the burden of showing that "the employer's reason is unworthy of belief." *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004), (quoting *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677 (7th Cir. 2002)).

Welch must show that: "(1) the proffered reasons are factually baseless, (2) the proffered reasons were not the actual motivation for the discharge, or (3) the proffered reasons were insufficient to motivate the discharge." *Id.* (citing *Koski*, 307 F.3d at 677). Veolia contends that it terminated Welch because he violated company policy on injury reporting and falsified a document, and his exercise of his rights under the Workers' Compensation Act was not a factor in that termination. Welch counters that Veolia's stated reason for his termination must be pretext because he did report his injury in accordance with company policy and did not falsify his route sheet. The issue, thus, is whether a rational jury could conclude that Veolia's stated reason was not its actual motivation. *McCoy v. Maytag Corp.*, 495 F.3d 515, 523 (7th Cir. 2007) (citation omitted).

The parties do not dispute that Welch was injured on May 27, 2009. No one witnessed Welch's injury. Thus, Veolia had only Welch's word on which to base its conclusion that he knew that he was injured on May 27 and falsified his route sheet. Welch's written injury report states only that he was lifting heavy bulk items and bags and noticed a bulge in his shoulder the following morning. (Welch's Employee Stmt.) Budny's Supervisor's Investigation Report states that Welch reported that he felt a "tweak or pain in his shoulder" while lifting on May 27. (Supervisor's Investigation Report at 1.) In an e-mail to David Wall, Greenbaum states that Welch told her that he had injured his shoulder while lifting cans over his side loader. (June 2, 2009 Email.)

Welch denies that he knew he had suffered an injury on May 27, and contends that he therefore had nothing to report and did not falsify his route sheet. Welch did not believe himself to be injured on May 27, he asserts, because the "twinge" he felt in his shoulder did not cause him pain at that time. (Pl.'s 56.1 Resp. ¶ 24.) Welch insists he told Greenbaum that he believed his injury resulted from lifting heavy objects on a daily basis, rather than from a single traumatic event. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 19.) The statements attributed to Welch by Budny and Greenbaum, on May 28 and June 1 respectively, are consistent with Welch's attributing his injury to his work on May 27 in hindsight, after it was clear to him that his shoulder was indeed injured,

14

and do not themselves require the conclusion that he falsified his route sheet or failed to report an injury.

Further, Welch does not deny that he told Budny that he felt a "tweak" in his shoulder on May 27. That Welch felt a "tweak," soreness, or even pain in his shoulder on May 27, however, does not establish that he was aware that he suffered an injury that he needed to report. There is evidence that Welch often had to lift heavy items without assistance. In fact, when Welch called Greenbaum to report his injury, he also complained about the difficulty he had with the heavy loads and bulk items he encountered on his route. (Am. Compl. ¶ 19; Def.'s 56.1 ¶ 47; Welch Dep. Excerpts 100:13-102:13.) A jury could easily conclude that tweaks and soreness were a regular part of Welch's workday. What Welch actually told Veolia management about what he felt on May 27 is either unclear or disputed. The record here does not provide sufficient basis to conclude that Welch lied when he checked the box indicating that he had no accident or injury on his May 27, 2008 route sheet.

Indeed, a reasonable jury could conclude that Welch reported his injury in accordance with Veolia's policy. Veolia employees injured on the job are to complete an employee injury report "immediately or, as soon as possible." (Def.'s 56.1 ¶ 21.) Employees are instructed to report the injury in writing and to report it to a supervisor during the workday, or at the end of the day when he turns in his paperwork. (Def.'s 56.1 ¶ 19.) Veolia concedes, however, that an injury does not necessarily need to be reported the day it occurs.[6] Not all injuries manifest themselves

---

[6] Employers have an interest in ensuring that workplace injuries are reported as soon as possible. However, a policy that permits firing an employee for not reporting an injury on the day it occurs without regard to whether the employee knew or should have known that he was injured may be an illegal retaliatory policy. In *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214, 868 N.E.2d 374 (3rd Dist. 2007), the Illinois Appellate Court held that an ostensibly neutral employment policy that had the effect of penalizing employees who file workers' compensation claims may in fact be retaliatory. 373 Ill. App. 3d 214, 868 N.E.2d at 380–81. In *Siekierka*, the plaintiff suffered a work injury necessitating surgery, but his employer's workers' compensation policy required him to see an insurer-provided doctor before proceeding. The insurer's doctor
(continued...)

immediately, and Veolia's policy seems to take this into account. Veolia acknowledged that it is acceptable under company policy for an employee to report an injury as soon as he realizes that he is injured. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 3.) Wysocki, Welch's direct supervisor, testified that if Welch first felt injured on May 28, 2009, then his injury report complied with company policy. (Pl.'s 56.1 Add'l ¶ 9.)

According to Welch, that is exactly what happened. Welch contends that the following morning when his shoulder was red and swollen he became aware that he had sustained an injury and complied with company policy by reporting the injury that day. (Pl.'s Mem. at 1-2.) It is undisputed that Welch reported the injury at the start of his next shift, less than 24 hours after it occurred, and there is no evidence that Welch made any attempt to conceal that he was injured. The evidence here establishes that Welch's injury report, if not "immediate," was made as soon as possible. Further, Welch's report satisfied the stated goals of the policy: ensuring that the injury occurred on company time, and ensuring that employee injuries are treated promptly. (Def.'s Resp. to Pl.'s 56.1 Add'l ¶ 13.)

To establish pretext, Welch must show that Veolia's proffered reason was not the actual motivation for his discharge. *McCoy*, 495 F.3d at 523 (citation omitted). "The mere existence of a valid or sufficient reason [for discharge] . . . does not defeat a retaliatory discharge claim." *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214, 868 N.E.2d 374, 380 (3rd Dist. 2007). On the evidence here, a reasonable jury could conclude that Veolia's stated reason was no reason

---

[6](...continued)
adopted a "wait and see" approach before considering surgery, and the extra four weeks of waiting placed the employee beyond the duration of his authorized leave. The employer then terminated the employee for failing to return to work. The appellate court noted that under the employer's policy, the plaintiff "was faced with the option of pursuing his worker's compensation right to have the surgery or attempting to return to work without it." 373 Ill. App. 3d 214, 868 N.E.2d at 381. "The cause of action for retaliatory discharge deters employers from presenting their employees with the untenable choice of retaining their jobs or pursuing compensation for their injuries through workers' compensation proceedings." *Brooks v. Pactiv Corp.*, 12-1155, 2013 WL 4774519 (7th Cir. Sept. 6, 2013) (citing *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720, 731 (Ill.1992).

16

at all. Therefore, Veolia's motion for summary judgment is denied. The evidence of causation is not so overwhelming as to warrant granting summary judgment in Welch's favor, however, Welch's motion for summary judgment must also be denied.

## **CONCLUSION**

For the reasons discussed above, both motions for summary judgment [36, 40] are denied.

ENTER:

Dated: September 26, 2013

_____
REBECCA R. PALLMEYER
United States District Judge